STATE OF NORTH CAROLINA v. JASMINE ALBERTO ANDUJAR

No. COA05-1612

(Filed 21 November 2006)

**1. Constitutional Law— effective assistance of counsel— failure to make motion to dismiss charge of first-degree burglary**

Defendant was not denied effective assistance of counsel based on his trial counsel's failure to make a motion to dismiss the charge of first-degree burglary and the lesser-included offenses at the close of all evidence, because: (1) there was sufficient evidence that a breaking and entering took place based on a witness's statement; (2) defendant did not contend in his brief that there was insufficient evidence presented at trial regarding any of the other elements of first-degree burglary, and thus questions regarding the other elements are abandoned under N.C. R. App. P. 28(b)(6); and (3) there was no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different.

**2. Constitutional Law— effective assistance of counsel—failure to make motion to dismiss charge of robbery with dangerous weapon**

Defendant was not denied effective assistance of counsel based on his trial counsel's failure to make a motion to dismiss

STATE v. ANDUJAR

[180 N.C. App. 305 (2006)]

the charge of robbery with a dangerous weapon and the lesser-included offenses, because: (1) multiple witnesses testified regarding the robbery; (2) there was sufficient evidence that defendant was the perpetrator of the offense; and (3) there was no reasonable probability that, in the absence of counsel's alleged errors, the result of the proceeding would have been different.

**3. Appeal and Error— preservation of issues—sufficiency of evidence—failure to move to dismiss case**

Although defendant contends the trial court erred as a matter of law or committed plain error by failing to dismiss the charges of first-degree burglary and robbery with a dangerous weapon, this assignment of error is dismissed, because: (1) a defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action, or for judgment as in case of nonsuit, at trial; and (2) defendant did not move to dismiss the action.

**4. Sentencing— consecutive—allegation of retaliation for exercising right to trial**

The trial court did not err as a matter of law by sentencing defendant to consecutive terms of imprisonment allegedly in retaliation for defendant's exercise of his right to trial by jury, because: (1) although the trial court should not have referenced defendant's failure to enter a plea agreement, it cannot be said under the facts of this case that defendant was prejudiced or that defendant was more severely punished based on his exercise of his constitutional right to trial by jury; (2) nothing in the record illustrates that the trial court based its sentence on anything other than the evidence before it; and (3) the trial court did not reference the plea offer during sentencing but referred to it after sentence had been imposed.

Appeal by defendant from judgments entered 22 August 2005 by Judge William C. Griffin, Jr., in Beaufort County Superior Court. Heard in the Court of Appeals 10 October 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Susan R. Lundberg, for the State.*

*Sue Genrich Berry for defendant appellant.*

STATE v. ANDUJAR

[180 N.C. App. 305 (2006)]

McCULLOUGH, Judge.

Defendant appeals judgments entered after a jury verdict of guilty of first-degree burglary and robbery with a dangerous weapon. We determine there was no error.

FACTS

On 12 January 2004, Jasmine Alberto Andujar ("defendant") was indicted for one count of first-degree burglary and one count of robbery with a dangerous weapon. The case was tried before a jury on 22 August 2005 in the Criminal Session of Beaufort County Superior Court.

The State presented evidence at trial which tended to show the following: On or about the night of 18 August 2003, the Morales family, consisting of father Crisantos, mother Maria, sons Eliel and Irvin, and daughter Lucero, was sleeping in their mobile home. The sleeping arrangements for the family consisted of Crisantos and his youngest son, Irvin, sleeping on the floor in the living room, Maria and Lucero sleeping in one of the bedrooms and the older son, Eliel, sleeping in the second bedroom.

Lucero testified that she was awaken from her sleep when she heard voices in the living room and the loud noise of someone kicking on the front door. Lucero got up and walked into the living room and saw two men pointing guns at her father and little brother. One of the men was Hispanic or Puerto Rican and the other was a black man. The black man had a shotgun and the Hispanic man had a handgun. Eventually, the entire Morales family was held at gunpoint in the living room. While being held at gunpoint, the men stole money from the Morales family, stole jewelry from them, assaulted Crisantos, and threatened to kill Irvin.

At some point Crisantos began struggling with one of the intruders and was able to wrestle the shotgun away from him. The intruders ran out the door, into the street, and got in their vehicle and drove off. Lucero immediately called the police. An ambulance was called and Crisantos was taken to the hospital for treatment.

Yolanda Daniels ("Yolanda") testified that on or about 20 August 2003, defendant came to her house and told her that he and a black man, Sherman, had a confrontation with some Mexicans. Yolanda testified that the confrontation with the Mexicans involved a struggle over a gun. Defendant told Yolanda that one of the Mexicans got hit

STATE v. ANDUJAR

[180 N.C. App. 305 (2006)]

with a gun and was injured. Yolanda also testified that the Mexican needed medical attention due to the injury he sustained.

Beaufort County Sheriff Office Investigator Royce Lee Hamm, Jr., ("Officer Hamm") testified that on or about 21 August 2003, he and Officer Gentry Pinner ("Officer Pinner") went to Yolanda's house based on a lead to a possible suspect in the burglary and robbery of the Morales home and family. Defendant was at Yolanda's house when Officers Hamm and Pinner arrived. Officer Pinner went to the front door, and Officer Hamm went around to the backdoor. While Officer Hamm was standing by the backdoor, defendant came out of the door. Defendant immediately starting running when he saw Officer Hamm standing there. Officer Hamm called defendant by his name and told him that he just wanted to talk to him, but defendant kept running. Officer Hamm did not pursue defendant as he did not have a warrant for his arrest. Officer Hamm testified that after defendant fled Yolanda's house, he met with Yolanda. Yolanda's statements to Officer Hamm were consistent with her trial testimony. Officer Hamm also testified that on or about 27 August 2003, he talked with members of the Morales family. Officer Hamm testified that he took a statement from Lucero, and that her statement was consistent with her trial testimony.

Ricky Wayne Smith ("Smith") testified that while he shared a jail cell with defendant in the Beaufort County Jail, defendant told him that he and a friend robbed some Mexicans at the Mexicans' house. Defendant told Smith that he had a gun and his friend had a Mossberry when they broke into and entered the house and robbed the Mexicans. Smith testified that a Mossberry is a shotgun. Defendant told Smith that when they entered the Mexicans' home, the father and a son were in the front room. Defendant told Smith that his friend held the shotgun on the father and son while he went to a bedroom and took some money. Defendant also told Smith that the father started to fight with his friend over the shotgun and that defendant whipped the Mexican father with his gun.

Defendant did not present any evidence.

I.

[1] Defendant contends he was denied his right to effective assistance of counsel when his trial counsel did not make a motion to dismiss the charge of first-degree burglary and the lesser included offenses based on insufficient evidence. We disagree.

"A defendant's right to counsel includes the right to the effective assistance of counsel." *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985). When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, *reh'g denied*, 467 U.S. 1267, 82 L. Ed. 2d 864 (1984). In order to meet this burden defendant must satisfy a two-part test:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.* (Emphasis added)."

*Braswell*, 312 N.C. at 562, 324 S.E.2d at 248 (citation omitted). "Thus, if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *Id.* at 563, 324 S.E.2d at 249.

In the instant case, defendant asserts it was ineffective assistance of counsel to fail to move to dismiss the charge of first-degree burglary and the lesser included offenses at the close of all of the evidence because there was insufficient evidence presented at trial. "In determining the sufficiency of the evidence to withstand a motion to dismiss . . . , the trial court must determine 'whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *State v. Squires*, 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003) (citation omitted), *cert. denied*, 541 U.S. 1088, 159 L. Ed. 2d 252 (2004). "Substantial evidence is such relevant evidence as is necessary to persuade a rational juror to accept a conclusion." *Id.* "The trial court must review the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom." *Id.* The trial court should decide whether the evidence is sufficient to get the case to the jury; the court should not weigh the evidence. *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652 (1982).

"The elements of first-degree burglary are: (i) the breaking (ii) and entering (iii) in the nighttime (iv) into the dwelling house or sleeping apartment (v) of another (vi) which is actually occupied at the time of the offense (vii) with the intent to commit a felony therein." *State v. Singletary*, 344 N.C. 95, 101, 472 S.E.2d 895, 899 (1996). Defendant's contention in his brief is that there was insufficient evidence of defendant breaking and entering into the Morales home. Defendant's brief asserts that there was no testimony which shows either an actual or constructive non-consensual entry. Defendant did not contend in his brief that there was insufficient evidence presented at trial regarding any of the other elements of first-degree burglary, and therefore, questions regarding the other elements are abandoned. N.C. R. App. P. 28(b)(6).

In the instant case, a statement made by Lucero to Officer Hamm was read into evidence by Officer Hamm. In the statement, Lucero stated that she was awakened by the loud noise of someone kicking on the front door. She stated that when she walked in the room where the door was located, she saw two men standing over her father with guns. Therefore, there is sufficient evidence that a breaking and entering took place. Further, there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different.

Accordingly, we disagree with defendant's contention.

## II.

**[2]** Defendant contends he was denied his right to effective assistance of counsel when his trial counsel did not make a motion to dismiss the charge of robbery with a dangerous weapon and the lesser included offenses based on insufficient evidence. We disagree.

The law regarding the right to effective assistance of counsel was stated above. Also, the law regarding a motion for insufficient evidence was also discussed above.

The elements of robbery with a dangerous weapon are: " '(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened.' " *State v. Barden*, 356 N.C. 316, 352, 572 S.E.2d 108, 131-32 (2002) (citations omitted), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003). Defendant contends that no one with first-hand knowledge of the robbery identified defendant as one of

the perpetrators, and therefore, insufficient evidence was presented at trial to convict defendant of the charge. Defendant does not claim insufficient evidence of any of the elements of robbery with a dangerous weapon, so he has abandoned any such argument. N.C. R. App. P. 28(b)(6).

In the instant case, multiple witnesses testified regarding the robbery. Lucero testified that two men, one meeting the general description of defendant, robbed her family. Yolanda testified that defendant told her that he and a black man had gotten in some trouble with some Mexicans and at least one gun was involved. Defendant told Yolanda that there was a struggle over the gun, and that one of the Mexicans had been hit with the gun and needed medical treatment. Officer Hamm testified that, during his investigation of the crime, he went to Yolanda's home searching for a possible suspect. When he was near the backdoor of Yolanda's home, defendant came out of the backdoor, saw Officer Hamm, and ran away. Finally, Smith testified that defendant told him that he and a friend had broken into the house of some Mexicans and robbed them. Defendant told Smith that they found the father and son in the front room and held the father at gunpoint with a shotgun while defendant took some money. Defendant also told Smith that he whipped the father with a gun. This is sufficient evidence that defendant was the perpetrator of the instant offense. Further, there is no reasonable probability that, in the absence of counsel's alleged errors, the result of the proceeding would have been different.

Accordingly, we disagree with defendant's contention.

### III.

**[3]** Defendant contends the trial court erred as a matter of law, or, in the alternative, committed plain error by failing to dismiss the charges of first-degree burglary and robbery with a dangerous weapon because there was insufficient evidence presented at trial that defendant was the perpetrator. We disagree.

Generally, "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b). Specifically, we have stated " '[a] defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to

dismiss the action, or for judgment as in case of nonsuit, at trial.' " *State v. Buchanan*, 170 N.C. App. 692, 693, 613 S.E.2d 356, 356-57 (2005) (quoting N.C. R. App. P. 10(b)(3)).

In the instant case, defendant did not move to dismiss the action, and therefore we disagree with defendant's contention.

## IV.

**[4]** Defendant contends the trial court erred as a matter of law by sentencing defendant to consecutive terms of imprisonment in retaliation for defendant's exercise of his right to trial by jury. We disagree.

At the outset, we note there is some question as to whether defendant preserved error for this issue on appeal. We determine it is best to reach the merits of the issue for judicial economy purposes.

A defendant has the right to plead not guilty, and "he should not and cannot be punished for exercising that right." *State v. Boone*, 293 N.C. 702, 712-13, 239 S.E.2d 459, 465 (1977). Thus,

> [w]here it can reasonably be inferred from the language of the trial judge that the sentence was imposed at least in part because defendant did not agree to a plea offer by the state and insisted on a trial by jury, defendant's constitutional right to trial by jury has been abridged, and a new sentencing hearing must result.

*State v. Cannon*, 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990).

Defendant's contention relies on *Cannon*. In *Cannon*, a lengthy voir dire hearing was conducted to determine the admissibility of some evidence. *Id.* at 38, 387 S.E.2d at 450. The trial judge ruled the evidence was admissible, and then held an unrecorded bench conference about the possibility of a negotiated plea of guilty. *Id.* at 38, 387 S.E.2d at 450-51. "Upon being advised that defendants demanded a jury trial, the trial judge told counsel in no uncertain terms that if defendants were convicted he would give them the maximum sentence." *Id.* at 38, 387 S.E.2d at 451. Therefore, the trial judge was going to punish defendant for not accepting the plea agreement. Our Supreme Court noted that the "trial judge stated his intended sentence even before the evidence was presented to the jury on the issue of guilt." *Id.* at 39-40, 387 S.E.2d at 451. Moreover, the Court stated that it could not "conclude that the sentences imposed were based solely upon the evidence[.]" *Id.* at 40, 387 S.E.2d 451.

In *State v. Gantt*, 161 N.C. App. 265, 588 S.E.2d 893 (2003), *disc. review denied*, 358 N.C. 157, 593 S.E.2d 83 (2004), we distinguished *Cannon* and determined that the defendant was not punished for deciding to not plead guilty. In that case, the defendant's counsel asked for a mitigated sentence, stating:

> [T]he offense he's been convicted of is certainly far beyond anything he's ever experienced as a Level 3. The absolute[] minimum sentence is 70 months. That is ample . . . deterrence. I understand that it would probably be a long shot to think the mitigated range[,] but certainly if a message needs to be sent, . . . that's enough time to send that kind of message.

*Id.* at 271, 588 S.E.2d at 898. Then, the trial judge made the following statement:

> At the beginning of the trial I gave you one opportunity where you could have exposed yourself probably to about 70 months but you chose not to take advantage of that. I'm going to sentence you to a minimum of 96 and a maximum of 125 months in the North Carolina Department of Corrections.

*Id.* at 272, 588 S.E.2d at 898. We determined that the trial judge's statement did not "rise to the level of the statements our Courts have held to be improper considerations of a defendant's exercise of his right to a jury trial." *Id.* at 272, 588 S.E.2d at 898.

The facts of the instant case do not rise to the level of either *Cannon* or *Gantt*. During the sentencing phase of the instant case, the trial court did not inquire about the existence of a plea offer. The trial court did ask the prosecutor whether he had made any progress finding out the identity of the other party involved in committing the crimes. The prosecutor responded, and on his own accord, stated that "[t]he original plea offer was to consolidate these cases if he would offer truthful testimony against . . . whoever the other individual was." The trial court made no comments regarding the plea agreement and then sentenced defendant to consecutive terms. After the sentencing, defense counsel asked the trial judge if she heard the trial judge correctly regarding the sentencing. The trial judge stated that the terms would be consecutive and that defendant was given a plea offer to run them concurrent, but he had rejected that plea.

"Although we disapprove of the trial court's reference to defendant's failure to enter a plea agreement, 'we cannot, under the facts of this case, say that defendant was prejudiced or that defendant was

EVERETT v. WELL CARE & NURSING SERVS.

[180 N.C. App. 314 (2006)]

more severely punished because he exercised his constitutional right to trial by jury.' " *Id.* at 272-73, 588 S.E.2d at 898 (citation omitted). Nothing in the record illustrates that the trial judge based his sentence on anything but the evidence before him. Here, the trial judge did not even reference the plea deal during sentencing as the trial judge did in *Gantt.* Also, we do not think the trial judge punished defendant for not accepting the plea agreement. Therefore, we see no merit in defendant's contention.

No error.

Judges WYNN and McGEE concur.